## PROMISSORY NOTE, LOAN AND SECURITY AGREEMENT

THIS PROMISSORY NOTE, LOAN AND SECURITY AGREEMENT (this "**Agreement**") dated as of <u>11/1/2022</u> ("**Effective Date**"), between **DePalma Acquisition I, LLC,** a limited liability company, as lender ("**Lender**"), and <u>Claude Mollenthiel</u> as borrower ("**Borrower**"), provides the terms on which Lender and Borrower shall amend and restate in their entirety the terms and provisions of the Original Loan Documents. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in <u>Section 10</u>.

**WHEREAS,** Borrower is the borrower and lien grantor under certain instruments, agreements and documents (as the same may have been or may from time to time be amended, restated, supplemented, or otherwise modified, the "**Original Loan Documents**") under which the <u>Rapid Funding NYC, LLC d/b/a Rapid Funding</u> (the "**Original Lender**") made one or more certain commercial taxi loan(s) to Borrower in the aggregate original principal amount of $<u>550,000.00</u> (the "**Original Loan**") and which Original Loan is secured by a first priority perfected lien on and security interests in the Collateral, including certain New York City Taxi Medallion number(s) set forth on <u>Schedule A</u> (each a "**Medallion**" and, if applicable, collectively the "**Medallions**");

**WHEREAS,** pursuant to certain assignment agreements and other related documents, Lender acquired and is the present owner and holder of the Original Lender's (or successor lender's, thereof as the case may be) right, title and interest as lender under the Original Loan Documents and is the present lender thereunder holding all of the rights as such thereunder including, without limitation, the Original Lender's rights in and to the Collateral;

**WHEREAS,** prior to the Effective Date (and without giving effect to the Medallion Relief Enhancement Program Principal Reduction Payment (as defined below) or the terms of this Agreement), the aggregate outstanding principal balance of the Original Loan was $<u>504,895.42</u>;

**WHEREAS,** Borrower has applied and has been accepted for participation in the Medallion Relief Enhancement Program, pursuant to which an entity appointed by the City of New York to administer the Medallion Relief Enhancement Program (the "**Loan Enhancement Administrator**") is making (or committing to make) a payment to the Lender on behalf of Borrower in the amount of $<u>30,000.00</u> per Medallion which is Collateral for the Obligations (the "**Medallion Relief Enhancement Program Principal Reduction Payment**"), as a partial pay-down of the Original Loan, which will reduce the outstanding principal balance of the Original Loan by said amount;

**WHEREAS,** in connection with the Medallion Relief Enhancement Program, and subject to the terms and conditions of this Agreement and the Medallion Relief Enhancement Program Documents (as defined herein), Lender agrees to amend and restate the Original Loan Documents in their entirety and thereunder agree to (i) reduce the outstanding principal balance of the Original Loan (after giving effect to the Medallion Relief Enhancement Program Principal Reduction Payment) to $<u>170,000.00</u> per Medallion, (ii) set the interest rate applicable to such loan to 7.3%, (iii) modify the repayment terms thereof, and (iv) otherwise amend the Original Loan Documents as provided herein; and

**WHEREAS**, subject to the terms and conditions hereof, Lender is willing to so amend and restate the Original Loan as set forth herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower (collectively, the "**Parties**") agree to amend and restate the Original Loan Agreement in its entirety as follows:

## 1. Loan and Terms of Payment

### 1.1. Loan.

(a) **Outstanding Principal Balance of the Original Loan.** Subject to the terms and conditions of this Agreement and the other Loan Documents, effective as of the Effective Date and so long as Lender has received the Medallion Relief Enhancement Program Principal Reduction Payment in accordance with the terms of the Medallion Relief Enhancement Program Documents and the other conditions contained in this Agreement are satisfied, the outstanding principal balance of the Original Loan shall be deemed for all purposes of this Agreement and all other Loan Documents reduced to $170,000.00 _____ (such reduced principal amount, the "**Loan**" or "**Outstanding Principal Balance**"). On or before the Effective Date, Borrower shall make a payment in the amount of $1,500 for payment of legal fees and expenses for documentation and negotiation of this Agreement (the "**Legal Fees**"), which shall be in addition to all regularly scheduled payments under this Agreement or other Loan Documents. Borrower acknowledges and agrees that the Loan is due and payable by Borrower to Lender, together with interest thereon, without a defense, setoff, or counterclaim. The Parties acknowledge and agree that any commitment or obligation (if any) of the Lender to make any additional loan or other financial accommodations to Borrower terminated prior to the Effective Date). The Loan together with interest thereon shall be repaid by Borrower to Lender in accordance with the terms of this Agreement and the other Loan Documents.

(b) **Promise to Pay.** Borrower hereby absolutely and unconditionally promises to pay to the order of Lender the Outstanding Principal Balance of the Loan, all accrued and unpaid interest thereon, and all other amounts provided for in this Agreement as and when due in accordance with this Agreement.

(c) **Amendment and Restatement.** This Agreement is given in consolidation, amendment, and restatement of the Original Loan and other amounts outstanding under the Original Loan Documents. In this regard, all amounts outstanding under or in connection with the Original Loan are deemed outstanding hereunder (subject to the terms and conditions of this Agreement) upon the execution and delivery of this Agreement. This Agreement is not intended to be and shall not be construed as a novation of the Original Loan or any other amounts or other Obligations outstanding under the Original Loan Documents.

(d) **Maturity Date.** All principal, interest, and other sums and Indebtedness due under and in connection with the Loan and the Loan Documents which have not been due and payable prior thereto as provided herein, shall be repaid in full by Borrower to Lender on the Maturity Date.

**1.2. Interest.**

(a) **Interest Rate.** Subject to <u>Section 1.2(b)</u>, the principal balance of the Loan shall bear interest at a fixed per annum rate of interest equal to seven and three-tenths percent (7.3%). Interest shall be computed on the basis of a 360-day year for the actual number of days elapsed.

(b) **Default Rate.** Immediately upon the occurrence and during the continuance of an Event of Default, the unpaid balance of all Obligations shall bear interest at a rate per annum of two percent (2.00%) above the rate effective immediately before the occurrence of the Event of Default (the "**Default Rate**"). Payment or acceptance of the Default Rate is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of Lender.

**1.3. Payments.**

(a) **Reserved.**

(b) **Monthly Principal and Interest Payments.** The Loan together with interest at the rate(s) then applicable under this Agreement shall be repaid by Borrower to Lender in consecutive monthly installments commencing on 11/1/2022_____, in the amount of $1,234.25_____ (the "**Monthly Payments**"). The Monthly Payments are calculated on an amortization schedule set forth on **Exhibit A** to pay off the Outstanding Principal Balance over twenty-five (25) years. In computing interest on the outstanding balance hereof, all payments received after 12:00 p.m. prevailing Eastern Time on any day shall be deemed received on the next Business Day. The outstanding principal of and any accrued but unpaid interest on the Loan and all other Obligations payable hereunder shall be due and payable in full on the Maturity Date to the extent that the same was not due and payable prior thereto. The Loan is not a revolving loan; amounts paid hereunder may not be reborrowed.

**1.4. Prepayment.** Upon no less than 30 days' written notice of a due date, Borrower may prepay on such due date all or any portion of the principal amount of the Loan without premium or penalty. Any prepayment shall be applied in accordance with the priority of payments in Section 1.9 hereof.

**1.5. Place of Payment.** All payments and prepayments of principal or interest under this Agreement or otherwise in respect of the Obligations shall be made in lawful money of the United States of America in immediately available funds, at the address of Lender indicated in <u>Section 9.1</u>, or such other place as the holder hereof shall from time to time, designate in writing to Borrower. If any payment of principal or interest under this Agreement shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment.

**1.6. Method of Payment.** Until directed otherwise in writing by Lender, all Monthly Payments under this Agreement, shall be made by Electronic Fund Transfer debit entries to a Borrower's account at an Automated Clearing House ("**ACH**") member bank. Each payment shall be initiated by Lender (or, at Lender's option, by its loan servicing agent) through the ACH network for settlement on the respective due dates. Prior to each payment due date, Borrower shall

deposit and/or maintain sufficient funds in its account to cover each debit entry. Notwithstanding the foregoing, the failure, for whatever reason, of the Electronic Funds Transfer debit entry transaction to be timely completed shall not relieve Borrower from its obligations to promptly and timely make all payments called for under this Agreement and the other Loan Documents when due and to comply with Borrower's other obligations hereunder; provided, however, Borrower shall not be responsible for any late charge in connection with any such transaction not timely completed solely due to the failure of the ACH network or Lender's failure to initiate such transaction.

**1.7. Fees.** Borrower shall pay to Lender all Expenses (including reasonable attorneys' fees and expenses) incurred after the date hereof, upon demand, to the extent allowable under the Code or other applicable law.

**1.8. Late Charge.** Borrower shall pay Lender a late charge equal to five percent (5.00%) of any payment of principal, interest or any other payment due under the Loan Documents which is not paid within twenty (20) days of its due date (at maturity, by acceleration, or otherwise and whether or not Lender has declared any Event of Default).

**1.9. Application of Payment.** Notwithstanding any other provision in this Agreement, but subject to the other subsections of this Section 1.9, on each payment date, the Lender or its servicer, as the case may be, shall disburse amounts received in respect of the Loan in accordance with the following priorities:

> (i) *first*, to the payment of all reasonable and documented costs, fees, indemnities and expenses then due that have been incurred by the Lender or the related servicer in connection with attempts to collect on unpaid Monthly Payments or any collection, sale or realization on the Collateral, all workout discussions and transactions, or otherwise in connection with this Agreement or any other Loan Document, including all reasonable and documented court costs and the reasonable and documented fees and expenses of agents and legal counsel, and any other reasonable and documented costs or expenses incurred in connection with the exercise of any right or remedy hereunder or under any other Loan Document;

> (ii) *second*, to the Lender to pay accrued and unpaid interest on the Loan, calculated at the non-default rate due to the Lender;

> (iii) *third,* to pay principal of the Loan then due to the Lender;

> (iv) *fourth,* to pay any accrued and unpaid late charges and interest calculated at the default rate; and

> (v) *fifth,* any excess shall be applied to as a prepayment of the Loan, provided, however, that such application shall not relieve Borrower of its obligation to make future Monthly Payments when due.

**1.10. Acknowledgement Concerning Medallion Relief Enhancement Program.** Borrower acknowledges that it is an express condition precedent that it be accepted into the

Medallion Relief Enhancement Program and that its participation in such program entitles the Lender to certain rights related to the Loan, including, without limitation, to be paid funds from the Medallion Relief Enhancement Program Reserve Fund in amounts equal to unpaid Monthly Payments on the Loan. Borrower acknowledges and agrees that: (A) in the event that Lender has received funds from the Medallion Relief Enhancement Program Reserve Fund in connection with the Loan, such payments will not be credited against or reduce Borrower's Obligations; (B) payments from the Borrower described in Section 1.9(ii) and Section 1.9(iii) above may be applied to reimburse the Loan Enhancement Administrator for payments from the Medallion Relief Enhancement Program Reserve Fund to or for the benefit of the Lender and such payments from the Medallion Relief Enhancement Program Reserve Fund will not reduce the Borrower's Obligations and will be accounted for separately; and (C) Borrower is not a third-party beneficiary of any agreements entered into by Lender in connection with the Medallion Relief Enhancement Program, including, without limitation, the Loan Enhancement Agreement among the Lender, the Loan Enhancement Administrator, and the Servicer (the **"Loan Enhancement Agreement"**), and will have no rights, benefits, claims or causes of action thereunder. Notwithstanding the foregoing, in the event of any disposition of a Medallion which results in a Deficiency, and such Deficiency has been fully paid off by funds from the Medallion Relief Enhancement Program Reserve Fund, Borrower shall have no further Obligations with respect to the related Loan.

**2. Creation of Security Interest; Collateral.**

**2.1. Reaffirmation and Grant of Security Interest.** Borrower hereby reaffirms prior security interests in the Collateral in favor of Lender and pledges, assigns and grants to Lender, to secure the payment and performance in full of all Obligations, a continuing lien on and security interest in, and pledges to Lender all of Borrower's right, title, and interest in and to the Collateral, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof to secure such Obligations. Borrower represents, warrants, and covenants that the security interest granted herein is and shall at all times continue to be a valid, first priority perfected security interest in the Collateral. If this Agreement is terminated, Lender's security interest in the Collateral shall continue until the Obligations (other than indemnity obligations) are repaid in full in cash. Upon payment in full in cash of the Obligations, Lender shall, at Borrower's sole cost and expense, release its security interest in the Collateral and all rights therein shall revert to the Borrower. Lender shall have all of the rights of a secured party under the Code.

**2.2. Perfection of Security Interest; Authorization to File Financing Statement.** Borrower hereby authorizes Lender, at Borrower's expense, to file such instruments and documents as may be necessary (in Lender's sole discretion), in order to perfect and preserve the pledge, assignment, and security interest granted or modified by this Agreement, and take all further action, that may be necessary (determined in Lender's sole discretion), in order to perfect and protect any pledge, assignment, or security interest granted or purported to be granted hereby, and the priority thereof, or to enable Lender to exercise and enforce Lender's rights and remedies hereunder with respect to any Collateral. In accordance with the Code, Borrower hereby authorizes Lender (as secured party) to file such financing statements or amendments thereof as may be necessary under the Code, and any other forms deemed necessary by Lender to perfect all security interests granted to Lender under hereunder in the Collateral. For the avoidance of doubt: (i) any such filing by Lender shall confirm Lender's first-priority security interest in the Collateral, which

Case 5:19-bk-03635-MJC   Doc 65   Filed 12/22/22   Entered 12/22/22 09:57:35   Desc
Main Document    Page 5 of 30

shall be limited to Borrower's Medallions, related rate cards and proceeds thereof; and (ii) Lender reserves the right to charge Borrower for the costs associated with such filings.

**2.3.    Authorization Regarding Collateral.**  Borrower consents to Lender contacting Curb Mobility, LLC, CMT group, the TLC, or other Governmental Authority, to discuss such Borrower, any Medallion, or any other aspect of the Collateral.  Curb Mobility, LLC, CMT group, and the TLC are specifically authorized to release any written information requested by Lender or its agents with respect to the Medallion and/or the Collateral.  Upon the occurrence and during the continuation of an Event of Default under Section 7.7 hereof, Borrower shall, upon Lender's request, release its personal or financial information, including, without limitation, with respect to tax information, Taxicab Passenger Enhancements Project ("**TPEP**") information, ridership information, inspection reports, the operations of Borrower, accident reports, and/or records of fines or administrative proceedings concerning the Medallion and/or the operation of any taxicabs associated therewith.

**3.    Conditions of Loan.**

**3.1.    Conditions Precedent to the Loan.**  Lender's obligation to amend and restate the Original Loan Documents and to restructure the Original Loan pursuant to the terms hereof is subject to the condition precedent that Lender shall have received, in form and content satisfactory to Lender, such documents, and completion of such other matters, as Lender may deem necessary or appropriate, in Lender's sole discretion, including, without limitation:

(a)    Borrower shall have delivered duly executed electronic or original signatures to the Loan Documents to which it is a party;

(b)    Borrower shall have delivered duly executed electronic original signatures to the Recurring ACH Payment Authorization Form in the form attached hereto as **Exhibit C**;

(c)    Borrower shall have paid the Legal Fees described in Section 1.1(a) of this Agreement;

(d)    (i) Lender shall have received confirmation from the TLC that the Medallion Relief Enhancement Program Reserve Fund shall cover any Loan payment deficiencies as and to the extent set forth in the Medallion Relief Enhancement Program Documents; (ii) an amendment to section 58-51 of Title 35 of the Rules of the City of New York amending the maximum fixed interest rate and maximum amortization period for a Supplement Loan Deficiency Guaranty under the Medallion Relief Program, in the form proposed and published in the City Record on August 29, 2022, as amended to remove the balloon payment prohibition, shall have been adopted by TLC and become effective pursuant to Section 1043 of the City Charter; and (iii) the Loan Enhancement Administrator shall have made the Medallion Relief Enhancement Program Principal Reduction Payment to Lender;

(e)    **Reserved.**

(f)    Lender shall have received such proof of ownership of the Collateral as Lender may request, including any lien searches required by Lender;

(g)     Lender shall have received evidence of the filing of UCC-1 Financing Statements perfecting Lender's first priority security interest in the Collateral, and any other evidence of perfection in the Collateral requested by Lender;

(h)     Lender shall have received evidence of all insurance required to be maintained by Borrower, if any, by applicable TLC rules and regulations

(i)     **Reserved;**

(j)     **Reserved.**

**3.2.     Covenant to Deliver.** Borrower agrees to deliver to Lender each item required to be delivered to Lender under this Agreement as a condition precedent to the Loan. Borrower expressly agrees that the amendment and restatement of the Loan by Lender prior to the receipt of any such item shall not constitute a waiver by Lender of Borrower's obligation to deliver such item, and the making of the Loan in the absence of a required item shall be in Lender's sole discretion.

**4.     Representation and Warranties.** Borrower represents and warrants as follows:

**4.1.     Small Business Concern; Collateral.** Borrower is an active small business concern and/or sole proprietors and has good and indefeasible title to the Collateral free and clear of all Liens, security interests, encumbrances, or adverse claims, except for the security interests created by this Agreement in favor of Lender. No dispute, right of setoff, counterclaim, or defense exists with respect to all or any part of the Collateral. Borrower has not executed any other security agreement currently affecting the Collateral and no financing statement or other instrument similar in effect covering all or any part of the Collateral is on file in any recording office except as may have been filed in favor of Lender. All of the documents relating to the Medallions which comprise the Collateral are valid, binding, and enforceable in accordance with their respective terms.

**4.2.     Litigation.** There are no actions or proceedings pending or, to the knowledge of Borrower, threatened against Borrower, including, but not limited to, any Insolvency Proceeding. There are no judgments against Borrower in any state or federal court.

**4.3.     Priority of Security Interest.** The security interest granted herein is and shall at all times continue to be a first priority perfected security interest in the Collateral.

**4.4.     Rules, Requirements and Procedures.** Borrower (or if Borrower is a corporation, partnership, limited liability company or joint venture, each officer, partner, or member of Borrower, as the case may be) has read and is familiar with the Rules, Requirements and Procedures Governing Owners of Medallions and Taxicabs as promulgated by the New York City Taxi and Limousine Commission (the "**Rules**"), and Borrower shall comply with the Rules and with any and all other applicable terms, provisions, rules, regulations and laws promulgated by any governmental or quasi-governmental agency having jurisdiction over such New York City taxicab vehicles, taxicab licenses and medallions as may be part of the Collateral. Borrower shall obtain all taxicab license and medallion renewals, auto use tax permits, vehicle registration and such other permits and licenses as may be required to operate its business.

**4.5.     Reserved.**

**4.6.** **Due Organization and Authorization.** If applicable, Borrower is duly existing and in good standing in its jurisdiction of formation and is qualified and licensed to do business and is in good standing in any jurisdiction in which the conduct of its business or its ownership of property requires that it be qualified, except where the failure to do so could not reasonably be expected to have a material adverse effect on such Borrower's business. Borrower represents and warrants to Lender that (a) Borrower's exact legal name is that indicated on the first page and on the signature page hereof; and (b) Borrower is an organization of the type and is organized in the jurisdiction set forth on the first page and on the signature page hereof. The execution, delivery and performance of the Loan Documents have been duly authorized, and do not conflict with Borrower's organizational documents, nor constitute an event of default under any material agreement by which Borrower is bound.

**4.7.** **Other Agreements.** After giving effect to the terms of this Agreement, Borrower is not in default under any agreement to which it is a party or by which it is bound in which the default could have a material adverse effect on Borrower's business.

**4.8.** **Unsatisfied Loans, Claims, Etc.** There are no unpaid or unsatisfied loans, claims of lien, special assessments, taxes or other matters which could constitute a lien or encumbrance against the Collateral.

**4.9.** **Fines, Fees, Etc.** As of the date hereof, all fines, fees, permits, association dues, registration fees or municipal fees relating to the Medallion(s) have been paid in full or are not yet due and payable.

**4.10.** **Violations, Suspensions, Etc.** No violations, suspensions or other restrictions have been imposed upon the Medallion(s).

**4.11.** **No Suits or Judgments.** There are no suits, judgments, bankruptcies or executions pending in any court whatsoever that could in any way materially affect Lender's lien on the Collateral.

**5.** **Affirmative Covenants.** Borrower covenants and agrees that, until payment in full of all outstanding Obligations hereunder and under the Loan Documents:

**5.1.** **Financial Statements, Reports, Certificates.** Promptly following Lender's request therefor, such financial statements and information (including, without limitation, information regarding the Collateral and the Medallions) as Lender may reasonably request from time to time.

**5.2.** **Collateral.** Borrower shall maintain good and indefeasible title to all of the Collateral free and clear of all Liens, security interests, encumbrances or adverse claims, except for the security interest in favor of Lender. Borrower shall not permit any dispute, right of setoff, counterclaim, or defense to exist with respect to all or any part of the Collateral. Borrower shall cause any financing statement or other security instrument with respect to the Collateral to be terminated, except as may exist or as may have been filed in favor of Lender. Borrower shall defend at its expense Borrower's right, title, and security interest in and to the Collateral against the claims of any third party. Borrower shall also (a) maintain all material permits, licenses, renewals, registrations and any other approvals necessary for the ownership and operations of the Medallion(s), and/or Borrower's business, (b) pay when due, all taxes, assessments, fines, fees or

other costs and expenses as they relate to the ownership or operation of the Medallion(s), (c) operate the Medallion(s) strictly in accordance with the rules, regulations and directives of the TLC, or any other governmental agency having jurisdiction over taxicab operations, (d) keep the Collateral in good order and repair (normal wear and tear excluded) and not use or permit the Collateral to be used unlawfully or in violation of applicable law, or any policy of insurance covering any of the Collateral, (e) promptly notify Lender in writing upon the occurrence of any default to which Borrower has knowledge, or (f) promptly notify Lender in writing of any event or circumstance which affects the value of the Collateral or the rights or remedies of Lender related thereto. For the avoidance of doubt, after the effectiveness of this Agreement, the Collateral shall be limited to Borrower's Medallions, and all associated rate cards and related rights, and all proceeds and products thereof, and liens on any other assets of Borrower shall be deemed released.

**5.3.** **Adverse Claim**. Borrower shall promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created hereunder and, at Borrower's expense, defend Lender's security interest in the Collateral against the claims of any third party.

**5.4.** **Government Compliance**. If applicable, Borrower shall maintain its legal existence and good standing in its respective jurisdiction of formation and maintain qualification in each jurisdiction in which the failure to so qualify would reasonably be expected to have a material adverse effect on Borrower's business or operations. Borrower shall comply with all laws, ordinances and regulations to which it is subject, noncompliance with which could have a material adverse effect on Borrower's business.

**5.5.** **Taxes**. Borrower shall make timely payment (taking into account all extensions of time for the payment thereof) of all material foreign, federal, state, and local taxes, surcharges, fees, charges, penalties, fines, sums or assessments, including, without limitation, New York City Parking Violations Bureau, New York State Department of Taxation and Finance, Metropolitan Transportation Authority and shall deliver to Lender, on demand, appropriate certificates attesting to such payments and documents sufficient to confirm proof of such payments.

**5.6.** **Insurance**. Borrower shall keep its business and the Collateral insured for risks and in amounts required by applicable TLC rules and regulations. If Borrower fails to obtain insurance as required under this Section 5.6 or to pay any amount or furnish any required proof of payment to third persons and Lender, Lender may, at its option, make all or part of such payment or obtain such insurance policies required in this Section 5.6, and take any action under the policies Lender deems prudent. Borrower shall give immediate written notice to Lender and to insurers of any loss or damage to the Collateral and shall promptly file proof of loss with said insurers. Borrower shall fully cooperate with its insurers in reporting, investigating, prosecuting or defending, as the case may be, any claim by, on behalf of or against Borrower arising out of the operation of its taxicab vehicles or otherwise in connection with its business. Borrower hereby irrevocably authorizes Lender to file claims if Borrower fails to do so as requested by Lender and, following the occurrence and during the continuance of any Event of Default, and Lender shall have the sole right to adjust, settle and collect claims under said insurance in the name of Borrower and Lender by such means, at such times and on such terms as Lender may determine, and in the name and on behalf of Borrower to execute releases and endorse checks or drafts payable in respect of such insurance claims. Borrower hereby assigns to Lender all sums that may become payable

under such insurance, including return of premiums or dividends, as additional security for the Obligations. Not less frequently than annually (and at the closing hereof), Borrower shall furnish to Lender certificates of insurance naming Lender as loss payee with respect to insurance required to be maintained by this Section 5.6.

**5.7.** **Litigation Cooperation.** Borrower shall, from the date hereof and continuing through the termination of this Agreement, make available to Lender, without expense to Lender, Borrower's or, if applicable, its and its officers, employees, and agents and such Borrower's books and records, to the extent that Lender may deem them reasonably necessary to prosecute or defend any third-party suit or proceeding instituted by or against Lender with respect to any Collateral or relating to the Borrower.

**5.8.** **Further Assurances**. Borrower will execute any further instruments and take further action as Lender reasonably requests to perfect or continue Lender's Lien in the Collateral or to affect the purposes of this Agreement.

**5.9.** **Reserved.**

**5.10.** **Inspection of Collateral and Borrower's Books and Records**. Borrower shall at all times maintain the Collateral in good repair, standing, condition and will maintain accurate and complete books and records of its operations. Upon Lender's prior notice to Borrower, Borrower shall permit Lender to visit (i) Borrower's office (or residence, as the case may be) to inspect the Collateral and to discuss Borrower's business and financial affairs with Borrower or an appropriate agent of Borrower with any of Borrower's officers, directors; members or partners, or its independent accountants, all of whom Borrower shall direct to cooperate fully in any such discussions, and (ii) Borrower's place or places of business and garages in which its taxicab vehicles are maintained. Upon the occurrence and during the continuation of an Event of Default under Section 7.7 hereof, Borrower shall also (a) furnish year-end income tax returns and/or financial statements to Lender within ninety (90) days of fiscal year end, and (b) execute and deliver to Lender in blank, Internal Revenue Service (IRS) Form 4506-T, and Borrower hereby authorizes Lender to obtain transcripts of tax returns as Lender may deem necessary at any time.

**6.** **Negative Covenants**. Borrower shall not do any of the following without Lender's prior written consent:

**6.1.** **Transfer or Encumbrance**. Borrower shall not (a) sell, assign (by operation of law or otherwise) or transfer any of Borrower's rights in any of the Collateral, (b) grant a Lien or security interest in or execute, file, or record any financing statement or other security instrument with respect to the Collateral to any party other than Lender, (c) deliver actual or constructive possession of any certificate, instrument, or document evidencing and/or representing any of the Collateral to any party other than Lender; or (d) permit (by operation of law or otherwise) any Lien or other encumbrance on or with respect to the Collateral other than the security interest in favor of the Lender; provided, however, this Section 6.1 shall not apply to any such sale, assignment or transfer of the Collateral by Borrower so long as the Obligations in respect of the Loan have been paid in full in connection with such sale, assignment or transfer.

**6.2.** **Impairment of Security Interest**. Take or fail to take any action which would in any manner impair the value or enforceability of Lender's Lien in any Collateral.

**6.3.** **Character of Business.** Change the general character of its business as conducted on the Effective Date or engage in any type of business not reasonably related to its business as presently conducted.

**6.4.** **Reserved.**

**6.5.** **Change of Name or Location.** Change the location of its principal place of business, or for business entities, its name, state of organization, or the location of its chief executive office without first notifying Lender in writing of such change at least thirty (30) days before its effective date.

**7.** **Event of Default.** Borrower agrees that an event of default shall result upon the occurrence of any one or more of the following events ("**Event of Default**"):

**7.1.** **Payment Default.** Borrower fails to pay any principal, interest, or other amounts due and payable under this Agreement when due and such failure shall continue unremedied for a period of twenty (20) days following the due date;

**7.2.** **Transfer of Collateral.** Borrower sells or otherwise transfers any of the Collateral, without prepaying the Obligations in full, or makes or suffers any further pledge or encumbrance of or any future Lien upon any of the Collateral or enters into any agreement to do any of the foregoing;

**7.3.** **Bankruptcy.** Borrower: (a) makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts as they become due; (b) institutes any Insolvency Proceeding, or (c) suffers an involuntary Insolvency Proceeding filed against Borrower and such involuntary petition is not dismissed within thirty (30) days after the filing thereof;

**7.4.** **Attachment.** (a) The Collateral is attached, seized, levied on, or comes into possession of a trustee or receiver and the attachment, seizure, or levy is not removed in twenty (20) days; (b) Borrower is enjoined, restrained, or prevented by court order from operating or otherwise leasing the Collateral; (c) a judgment or other claim becomes a Lien on the Collateral; or (d) a notice of Lien, levy, or assessment is filed against any of the Collateral by any Government Authority and not paid within twenty (20) days after Borrower receives notice;

**7.5.** **Misrepresentations.** Borrower or any Person acting for Borrower makes any material misrepresentation in this Agreement (including with respect to a representation made by the Borrower in Article 4 of this Agreement) , any other Loan Document or any other present or future agreement between Borrower and Lender in connection with this Agreement, all as amended, restated, or otherwise modified or in any writing delivered to Lender or to induce Lender to enter this Agreement or any Loan Document;

**7.6.** **Other Loan Documents.** A default or an event of default occurs under any other Loan Document;

**7.7.** **Medallion Enhancement Program Reserve Fund.** Lender or its servicer notifies Borrower that Lender's ability to receive monthly deficiency payments in connection with the Loan against the Medallion Enhancement Program Reserve Fund has terminated or ceased for any

reason to be in full force and effect or otherwise has been determined to not apply to the Loan; provided, however, Lender may waive any Event of Default arising under this Section 7.7 in its sole discretion; or

**7.8.    Covenant, Agreement or Condition Default**. Borrower fails to fully and timely perform, observe, or keep any covenant, agreement, or condition contained in this Agreement (other than Section 7.1 of this Agreement) or in any other Loan Document, and such failure shall continue unremedied for a period of thirty (30) days after notice thereof from the Lender to the Borrower.

## 8.    Remedies.

**8.1.    Rights and Remedies**. Upon the occurrence of an Event of Default, and expiration of any applicable cure period, Lender shall have the right to declare the entire amount of the Obligations, including all principal and interest accrued thereon, immediately due and payable by giving written notice thereof to the Borrower representative or Borrower and, upon such notice, the Obligations shall be immediately due and payable by Borrower to Lender; provided, that in case of any event described in <u>Sections 7.1 and 7.3</u>, the principal of the Loan then outstanding, together with accrued interest thereon and all fees and other Obligations accrued hereunder and under the other Loan Documents, shall automatically become due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by Borrower; and provided, further, that Borrower shall have the right to cure such Event of Default up until the time of the disposition of the Collateral provided that all related monthly costs, interest and fees are paid in connection with such cure by the Borrower. In the event that Lender elects to accelerate the Obligations as provided above and if within ten (10) days after the mailing of such notice Borrower fails to pay the Obligations, or, in any event, if Borrower shall fail to pay the entire unpaid principal balance of the Loan and accrued interest thereon upon the Maturity Date or any other part of the Obligations or interest thereon when it is due, then in any such events Lender or any servicer of Lender shall have the right, in addition to and in connection with any other rights it may have under this Agreement, the Code, and otherwise at law or in equity, (a) to apply any cash which it received pursuant to the provisions of this Agreement to the payment of the Obligations, (b) to enter upon Borrower's premises peaceably by Lender's or such servicer's own means or with legal process and take possession of the Collateral, and Borrower agrees not to resist or interfere, (c) to require Borrower to assemble the Collateral and make it available to Lender or such servicer at a place to be designated by Lender or such servicer that is reasonably convenient to both parties (it being agreed that Borrower's address set forth below is a place reasonably convenient for such assembling), and (d) to sell, assign, and deliver the Collateral at public sale or private sale, or otherwise dispose of the Collateral, for cash, on credit or future delivery, with or without advertisement of the time, place or terms of sale and in connection therewith to grant options and to use the services of a broker, upon ten (10) days' written notice to the Borrower of the date, time and place of any such public or private sale and the terms of the rate sale, which notice Borrower agrees is reasonable, all other demands, advertisements and notices being hereby waived, in each case in this clause (d) to the extent permitted by applicable law. Any sale shall be free of any and all equity or right of redemption, which Borrower hereby waives and releases to the fullest extent permitted by applicable law.

Case 5:19-bk-03635-MJC    Doc 65    Filed 12/22/22    Entered 12/22/22 09:57:35    Desc
Main Document      Page 12 of 30

At any public disposition Lender, or its designee, may purchase the Collateral. Lender shall not be obligated to make any disposition of any Collateral if it shall determine not to do so, regardless of the fact that notice of disposition may have been given. Lender may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time and if such sale be a private sale by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. If any of the Collateral is sold by Lender upon credit or for future delivery, Lender shall not be liable for the failure of the purchaser to purchase or pay for the same and, in the event of such failure, Lender may resell such Collateral. In no event shall Borrower be credited with any part of the proceeds of sale or other disposition of any Collateral until cash payment thereof has actually been received by Lender. In case of any sale or other disposition, Lender may first deduct all costs and expenses of collection, sale and delivery of the Collateral and any costs and expenses incidental thereto, including, without limitation or other disposition, the expense of pursuing, searching for, receiving, taking, keeping, and storing the Collateral, advertising the sale of the Collateral, reasonable attorneys' fees and disbursements, brokerage commissions and transfer fees and taxes, and shall apply any residue first to the payment of any accrued interest due hereunder and any other part of the Obligations and then to the payment of the unpaid principal balance thereof. The balance, if any, remaining after payment in full of the Obligations shall be paid to Borrower, to the extent permitted by law, provided there are no other claimants. Any sale conducted upon the foregoing terms or by any other method of disposition (if conducted in conformity with practices of any banks disposing of similar security) shall be deemed commercially reasonable. Borrower agrees that Lender or its servicer shall have the right, but not the obligation, to continue to retain the Collateral until such time as Lender or its servicer, in its reasonable judgment, believes that an advantageous price can be obtained for the Collateral and, absent gross negligence, Lender or its servicer shall not be liable to Borrower for any loss in the value of the Collateral by reason of any such retention of the Collateral by Lender or its servicer. Further, Lender may elect to retain the Collateral in full satisfaction of the Obligations, in which event notice thereof shall be given to Borrower, and if Lender receives an objection in writing from Borrower within twenty-one (21) days after service of the notice, then and in such event Lender shall commence to dispose of the Collateral in the manner hereinbefore set forth; provided, however, that if the net proceeds to be received from any disposition would be insufficient to satisfy in full the Obligations, Lender shall not be compelled to go forward with such proposed disposition, and shall be entitled to retain the Collateral in full satisfaction of the Obligations despite any objection by Borrower to such retention to the extent permitted by applicable law.

Borrower shall have no right to require that Lender proceed against all or any part of the Collateral or any guaranty or real or personal property given as security for the Obligations whether or not existing or hereafter given in any order of priority before or after or contemporaneously with the exercise of Lender's rights or remedies with respect to the Collateral.

**8.2.    Liability.** Borrower agrees that Lender and its officers, agents and attorneys shall incur no liability to Borrower in the event that Lender transfers the Collateral in accordance with the provisions of this Agreement, or refuses to effect any transfer of the Collateral attempted to be made by Borrower without any consent or approval of Lender required by the terms hereof, or refuses or fails to give any such consent or approval, and Borrower hereby agrees to indemnify Lender against, and to hold Lender harmless from, any and all expenses, costs, liability, and damages (including without limitation reasonable attorneys' fees and disbursements) incurred or

sustained by reason of its acts or omissions, as aforesaid. Borrower hereby waives, to the fullest extent permitted by law, any defense to the disposition of the Collateral or any claim to a superior right to the Collateral following an Event of Default due to Lender's participation in the Medallion Relief Enhancement Program.

**8.3.** **Power of Attorney.** Without limiting any rights, powers or privileges granted by this Agreement to Lender, upon the occurrence, and during the continuation, of an Event of Default, Lender is hereby appointed, which appointment as attorney-in-fact is irrevocable and coupled with an interest, the attorney-in-fact of Borrower for the purpose of carrying out the provisions of this Agreement and taking any action in connection therewith and executing any instruments which Lender may deem reasonably necessary or advisable to accomplish the purposes of this Agreement. Borrower agrees that the powers conferred on Lender are solely to protect Lender's interests in the Collateral and neither Lender nor any other person whom Lender may designate will be liable for any acts or omissions or for any error or judgment or mistake other than, and to the extent of, such person's gross negligence or willful misconduct.

**8.4.** **No Duty of Protection.** Lender shall have no duty as to the collection or protection of the Collateral or any income thereon or as to the preservation of any rights pertaining thereto, beyond the safe custody of any Collateral actually in its possession. Borrower releases Lender from any claims, causes of action and demands at any time arising out of or with respect to this Agreement, the Collateral and/or any actions taken or omitted to be taken by Lender with respect thereto.

**8.5.** **Receiver.** In any action to enforce, foreclose, or protect the Lien granted hereby, Lender shall be entitled, without notice and without regard to the adequacy of any security held by Lender for the Obligations, to the appointment of a receiver, to the full extent permitted by applicable law.

**8.6.** **Remedies Cumulative.** The failure to exercise the option to accelerate the maturity of the Obligations or any other right, remedy or recourse available to the holder hereof upon the occurrence of an Event of Default hereunder shall not constitute a waiver of the right of the holder hereof to exercise the same at that time or at any subsequent time with respect to such Event of Default or any other Event of Default, unless Borrower has cured such Event of Default. The rights, remedies and recourses of the holder hereof, as provided in this Agreement and available under applicable law or in equity shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefore shall arise, at the sole discretion of the holder hereof. The acceptance by the holder hereof of any payment under this Agreement which is less than the payment in full of all amounts due and payable at the time of such payment shall not (a) constitute a waiver of or impair, reduce, release or extinguish any right, remedy or recourse of the holder hereof, or nullify any prior exercise of any such right, remedy or recourse, or (b) impair, reduce, release or extinguish the obligations of any party liable under this Agreement or any other document executed in connection herewith as originally provided herein or therein. No delay on the part of the holder hereof in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof.

## 9. General Provisions.

**9.1. Notices.** All notices, consents, requests, approvals, demands, or other communication by any party to this Agreement or any other Loan Document must be in writing and shall be deemed to have been validly served, given, or delivered: (a) upon the earlier of actual receipt and five (5) Business Days after deposit in the U.S. mail, first class, registered or certified mail return receipt requested, with proper postage prepaid; (b) one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid; or (c) when delivered, if hand-delivered by messenger, all of which shall be addressed to the party to be notified and sent to the address indicated below. Lender or any Borrower may change its address by giving the other party written notice thereof in accordance with the terms of this <u>Section 9.1</u>.

| | |
|---|---|
| If to Borrower: | Claude Mollenthiel |
| | 1 Blair Court |
| | East Stroudsburg, PA 18301 |
| | |
| If to Lender: | DePalma Acquisition I, LLC |
| | c/o Field Point Servicing, LLC |
| | P.O. Box 671 |
| | Port Chester, New York 10573 |

**9.2. Usury.** This Agreement and any other document executed in connection herewith or therewith are intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. If any provision hereof or of any other document executed in connection herewith or therewith or the application thereof to any Person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the application of such provision to any other Person or circumstance nor the remainder of the instrument in which such provision is contained shall be affected thereby and shall be enforced to the greatest extent permitted by law. It is expressly stipulated and agreed to be the intent of the holder hereof to at all times comply with the usury and other applicable laws now or hereafter governing the interest payable on the indebtedness evidenced by this Agreement. If the applicable law is ever revised, repealed, or judicially interpreted so as to render usurious any amount called for under this Agreement or under any of the other documents executed in connection herewith or therewith, or contracted for, charged, taken, reserved or received with respect to the indebtedness evidenced by this Agreement, or if holder's exercise of the option to accelerate the maturity of this Agreement, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by law, then it is the express intent of Borrower and the holder hereof that all excess amounts theretofore collected by the holder hereof be credited on the principal balance of this Agreement (or, if this Agreement and all other indebtedness arising under or pursuant to the other documents executed in connection herewith or therewith have been paid in full, refunded to Borrower), and the provisions of this Agreement and the other documents executed in connection herewith or therewith immediately be deemed reformed and the amounts thereafter collectable hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid, or agreed to be paid, by Borrower for the use, forbearance, detention, taking, charging, receiving or reserving of the indebtedness of Borrower to the holder hereof under this Agreement or arising under or pursuant to the other documents executed in connection herewith or therewith shall, to the maximum extent permitted by applicable

Case 5:19-bk-03635-MJC    Doc 65    Filed 12/22/22    Entered 12/22/22 09:57:35    Desc
                          Main Document      Page 15 of 30

law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to such indebtedness for so long as such indebtedness is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other documents executed in connection herewith or therewith, it is not the intention of the holder hereof to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

**9.3. Expenses.** Borrower agrees, to the extent allowable under the Code, to pay promptly after written demand therefor, all reasonable and documented out of pocket costs and expenses (including, without limitation, attorney's fees and expenses, and travel expenses) incurred by Lender after an Event of Default in connection with the collection of the Obligations or the enforcement of this Agreement, the other Loan Documents or any such other documents or during any workout, restructuring or negotiations in respect thereof. All Obligations provided for in this Section 9.3 shall survive payment of the Obligations and termination of this Agreement.

**9.4. Attorney's Costs.** If this Agreement is placed in the hands of an attorney to protect Lender's interest in the Collateral or for collection, or is collected in whole or in part by suit or through probate, bankruptcy or other legal proceedings of any kind, Borrower agrees, to the extent allowable under applicable law to pay, in addition to all other sums payable hereunder, all costs and expenses, including but not limited to reasonable attorneys' fees.

**9.5. Waivers.** Borrower and any and all endorsers of this Agreement severally waive presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration and dishonor, diligence in enforcement and indulgences of every kind and without further notice hereby agree to renewals, extensions, exchanges or releases of collateral, indulgences or partial payments, either before or after maturity.

**9.6. Successors and Assigns.** This Agreement binds and is for the benefit of the successors and permitted assigns of each party. Borrower may not assign this Agreement or any rights or obligations under it without Lender's prior written consent. Lender has the right, without the consent of Borrower, to sell, transfer, negotiate, or grant participation in all or any part of, or any interest in, Lender's obligations, rights, and benefits under this Agreement and the other Loan Documents; provided, however, that Lender shall provide Borrower a notice with respect to any such sale or transfer but shall not be required to provide Borrower notice of any such participation interest. In the event that Lender shall sell, assign or grant participation interest(s), Lender may, in its sole discretion, disclose financial or other information to prospective participant(s) with respect to Borrower, and any co-borrowers, guarantors and endorsers, and Borrower shall cooperate with Lender in connection with any such participation and shall execute any and all documents which may be necessary or desirable, in the sole discretion of the Lender, to effectuate any such participation(s).

**9.7. Indemnification.** BORROWER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS LENDER AND ITS OFFICERS, EMPLOYEES, AND AGENTS AGAINST: (A) ALL OBLIGATIONS, DEMANDS, CLAIMS, AND LIABILITIES ASSERTED BY ANY OTHER PERSON IN CONNECTION WITH THE TRANSACTIONS DESCRIBED OR CONTEMPLATED BY THE LOAN DOCUMENTS; AND (B) ALL LOSSES OR EXPENSES INCURRED, OR PAID BY LENDER FROM, FOLLOWING, OR CONSEQUENTIAL TO

TRANSACTIONS BETWEEN LENDER AND BORROWER (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES), EXCEPT FOR LOSSES CAUSED BY LENDER'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. THE FOREGOING INDEMNITY BINDS BORROWER TO INDEMNIFY LENDER AND ITS OFFICERS, EMPLOYEES AND AGENTS FOR ITS OWN NEGLIGENCE (WHETHER SOLE, COMPARATIVE, CONTRIBUTORY, OR OTHERWISE, BUT NOT GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) AND THAT OF ITS OFFICERS, EMPLOYEES, AGENTS AND CONTRACTORS, AS WELL AS ANY LIABILITY ARISING BY VIRTUE OF ANY SUCH PERSON'S STRICT LIABILITY.

**9.8.  Limitation of Actions**. Any claim or cause of action by Borrower against Lender, its directors, officers, employees, agents, accountants, attorneys, or any other Person affiliated with or representing Lender based upon, arising from, or relating to this Agreement or any other Loan Document, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, occurred, done, omitted or suffered to be done by Lender, its directors, officers, employees, agents, accountants or attorneys shall be barred unless asserted by Borrower by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within two years after the first act, occurrence or omission upon which such claim or cause of action, or any part thereof is based, and the service of a summons and complaint on an officer of Lender, or on any other person authorized to accept service on behalf of Lender, within thirty (30) days thereafter. Borrower agrees that such two-year period is a reasonable and sufficient time for Borrower to investigate and act upon any such claim or cause of action. The two-year period provided herein shall not be waived, tolled, or extended except by the written consent of Lender in its sole discretion. This provision shall survive any termination of this Loan Agreement or any other Loan Document.

**9.9.  Time of Essence**. Time is of the essence for the performance of all obligations in this Agreement.

**9.10.  Severability of Provisions**. Each provision of this Agreement is severable from every other provision in determining the enforceability of any provision.

**9.11.  Amendments in Writing; Integration**. All amendments to this Agreement must be in writing signed by both Lender and Borrower. This Agreement and the Loan Documents represent the entire agreement about this subject matter and supersede prior negotiations or agreements. All prior agreements, understandings, representations, warranties, and negotiations between the parties about the subject matter of this Agreement and the Loan Documents merge into this Agreement and the Loan Documents.

**9.12.  Counterparts**. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, is an original, and all taken together, constitute one Agreement.

**9.13.  Survival**. All covenants, representations and warranties made in this Agreement continue in full force until this Agreement has terminated pursuant to its terms and all Obligations (other than inchoate indemnity obligations and any other obligations which, by their terms, are to survive the termination of this Agreement) have been satisfied. The obligation of Borrower in

<u>Section 9.7</u> to indemnify Lender shall survive until the statute of limitations with respect to such claim or cause of action shall have run.

**9.14. Business Loan**. Borrower agrees that this Agreement and borrowings hereunder are not for personal, family or household purposes, and are solely for business, commercial or other similar purposes.

**9.15. Choice of Law. THE PLACE OF NEGOTIATION, EXECUTION AND DELIVERY OF THIS AGREEMENT IS THE STATE OF NEW YORK. THIS AGREEMENT HAS BEEN EXECUTED UNDER, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, EXCEPT AS SUCH LAWS ARE PREEMPTED BY APPLICABLE FEDERAL LAWS.** Borrower and Lender submit to the exclusive jurisdiction of the state and federal courts in New York; provided, however, that nothing in this Agreement shall be deemed to operate to preclude Lender from bringing suit or taking other legal action in any other jurisdiction to realize on the Collateral or any other security for the Loan, or to enforce a judgment or other court order in favor of Lender. Borrower expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and Borrower hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or forum non conveniens and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such court. Borrower hereby waives personal service of the summons, complaints, and other process issued in such action or suit and agrees that service of such summons, complaints, and other process may be made by registered or certified mail addressed to Borrower at the address set forth in <u>Section 9.1</u> of this Agreement and that service so made shall be deemed completed upon the earlier to occur of Borrower's actual receipt thereof or ten (10) days after deposit in the U.S. mails, proper postage prepaid.

**9.16. Jury Trial Waiver. THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY LITIGATION IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THE LOAN, THE COLLATERAL, THIS AGREEMENT, OR ANY OTHER LOAN DOCUMENT, OR THE VALIDITY, PROTECTION, INTERPRETATION, COLLECTION OR ENFORCEMENT THEREOF, OR ANY OTHER CLAIM, OR DISPUTE HOWEVER ARISING BETWEEN THE PARTIES.**

**9.17. Release in favor of Lender**.

(a)     Borrower acknowledges, confirms and agrees that, as of the Effective Date, Borrower has no offsets, defenses, claims, or counterclaims against either Original Lender or Lender with respect to any of its respective liabilities and obligations to Lender under the Original Loan Documents, this Agreement or any other Loan Document, and, to the extent that Borrower has any such claims under this Agreement or any other Loan Document, Borrower affirmatively WAIVES and RENOUNCES such claims as of the Effective Date.

(b)     Further, as of the Effective Date, Borrower hereby RELEASES Original Lender, Lender, and their respective agents (including, but not limited to, Field Point Servicing LLC and its respective agents), servants, employees, officers, directors, members, shareholders, predecessors, successors, assigns and participants (collectively, the **"Releasees"**) from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

Case 5:19-bk-03635-MJC    Doc 65    Filed 12/22/22    Entered 12/22/22 09:57:35    Desc
Main Document    Page 18 of 30

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity against any Releasee that Borrower and Borrower's agents, servants, employees, officers, directors, members, shareholders, heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of, any matter arising from or related to the Original Loan, the Original Loan Documents, the Loan, the Collateral, this Agreement or any other Loan Document.

(c)     Borrower waives the benefits of any law which may provide in substance that a general release does not extend to unknown or unsuspected claims which, if known, might be material to the releasing Person's decision to grant a release. Borrower understands that the facts which it believes to be true at the time of making this release may later turn out to be different, and that information which is not now known or suspected may later be discovered. Borrower accepts this possibility and assumes the risk of later discovering different facts or new information. Borrower further agrees that this release shall in all respects continue to be effective and shall not be subject to termination or rescission because of the discovery of different facts or new information.

**9.18.  Reserved.**

**9.19.  Confidentiality.**  Borrower and Lender agree, to the extent permissible under applicable law, that the terms of this Agreement and the other Loan Documents shall be strictly confidential and shall not be disclosed to any third Person by Borrower, Lender, or any of their respective affiliates, employees, or agents. Any such Person may disclose the terms of, or release a copy of, this Agreement and the Loan Documents: (i) to a parent, shareholder, or affiliate on an as needed basis, determined by each Person in its sole discretion, and to attorneys, accountants, advisors and insurers of the Parties to the extent reasonably necessary for legal advice or financial, tax or audit purposes; (ii) to any governmental or private entity involved with the administration of and/or funding of payments in connection with the Medallion Relief Enhancement Program, (iii) to third Persons involved in business discussions with a party relating to asset sales, investments, mergers, or change of control transactions, provided such third Persons agree in writing to maintain the terms of the Loan Documents in confidence in accordance with the terms of this Section 9.19; (iv) upon subpoena, discovery, request, order of a court of competent jurisdiction, Governmental Authority, or regulatory authority, or as reasonably necessary to comply with legal or regulatory requirements; (v) to the extent that, in the written opinion of counsel, disclosure is required to comply with applicable laws; or (vi) to a court of competent jurisdiction, in order to enforce the terms of this Agreement. Prior to any disclosure under subparagraphs (iv) or (v) hereof, the Parties agree to use reasonable efforts to, if permitted by applicable law or regulator, promptly notify each other in writing of the request or need for disclosure and, when applicable to a prospective disclosure, to cooperate in obtaining a protective order or other available relief to prevent or limit discovery, testimony, or other disclosure regarding the Loan Documents. Nothing in this paragraph shall prevent Borrower from disclosing the terms of this Agreement and the other Loan Documents with the New York Taxi Workers Alliance or other representatives or advocates.

Notwithstanding the foregoing, to the extent that the New York Legal Assistance Group ("**NYLAG**"), or such other attorneys for Borrower, is required to report the results of its cases

pursuant to its funding guidelines, the Parties agree that such individual or entity is permitted to disclose only the following general, aggregated financial information related to multiple loans and/or agreements handled by NYLAG (the "**Report**"), and in furtherance thereof, Lender agrees to provide to NYLAG on a quarterly basis: aggregate change in unpaid principal balance; aggregate change in monthly payment; aggregate amount of debt forgiveness; and aggregate count of Medallions securing the Obligations. The Report shall not identify this Loan, Borrower, Collateral, or any specific terms of this Agreement.

**9.20.** **Register.** Lender, acting solely for this purpose as a non-fiduciary agent of Borrower, shall maintain, or cause to be maintained, at one of its offices a register in which it will record the name and address of Lender and the name and address of each assignee under this Agreement, and the principal amount (and stated interest) of the Loan owing to each such lender pursuant to the terms hereof and each Loan Document and any assignment or other transfer document from time to time (the "**Register**"). Notwithstanding anything else to the contrary in any Loan Document, the entries in the Register shall be conclusive absent manifest error, and Borrower and Lender may treat each Person whose name is recorded in the Register pursuant to the terms hereof as a lender hereunder for all purposes of this Agreement and the Loan Documents. The Register and Participant Register (as defined below) shall be available for inspection by the Borrower and Lender (and any of their successors or assigns) at any reasonable time and from time to time, upon reasonable prior notice. Additionally, Lender (or any of its successors or assigns) that sells a participation shall, acting solely for this purpose as a non-fiduciary agent of the Borrower, maintain a register on which it enters the name and address of each participant and the principal amounts (and stated interest) of each participant's interest in the Loan under the Loan Documents (the "**Participant Register**"). The entries in the Participant Register shall be conclusive absent manifest error, and Lender shall treat each Person whose name is recorded in the Participant Register as the owner of such participation for all purposes of the Loan, this Agreement and the Loan Documents notwithstanding any notice to the contrary. In connection with any assignment or participation hereunder, all information required to be recorded in the Register or the Participant Register, as applicable, pursuant to this clause will be updated, as necessary, to reflect such assignment or participation. No assignment or participation shall be effective unless it is registered in the Register or the Participant Register, as applicable, and any related promissory note must be surrendered and reissued.

**9.21.** **Legal Counsel**. Borrower has read and understands the contents of this Agreement and has been afforded an opportunity to retain legal counsel to represent it in the negotiation and execution of this Agreement and the Loan Documents.

**9.22.** **Borrower Liability**. Borrower waives (a) any suretyship defenses available to it under the Code or any other applicable law, and (b) any right to require Lender to: (i) proceed against Borrower or any other Person; (ii) proceed against or exhaust any security; or (iii) pursue any other remedy. Lender may exercise or not exercise any right or remedy it has against Borrower or any security it holds (including the right to foreclose by judicial or non-judicial sale) without affecting Borrower's liability. Notwithstanding any other provision of this Agreement or other related document, Borrower irrevocably waives all rights that it may have at law or in equity (including, without limitation, any law subrogating Borrower to the rights of Lender under this Agreement) to seek contribution, indemnification or any other form of reimbursement from any other Borrower, or any other Person now or hereafter primarily or secondarily liable for any of the

Case 5:19-bk-03635-MJC   Doc 65   Filed 12/22/22   Entered 12/22/22 09:57:35   Desc
Main Document      Page 20 of 30

Obligations, for any payment made by Borrower with respect to the Obligations in connection with this Agreement or otherwise and all rights that it might have to benefit from, or to participate in, any security for the Obligations as a result of any payment made by Borrower with respect to the Obligations in connection with this Agreement or otherwise. Any agreement providing for indemnification, reimbursement, or any other arrangement prohibited under this <u>Section 9.22</u> shall be null and void. If any payment is made to Borrower in contravention of this <u>Section 9.22,</u> Borrower shall hold such payment in trust for Lender and such payment shall be promptly delivered to Lender for application to the Obligations, whether matured or unmatured.

9.23. **Partial Recourse to Borrower.** Subject to the qualifications below, Lender shall not enforce the liability and obligation of Borrower to perform and observe the Obligations contained in the Loan Documents by any action or proceeding wherein a money judgment shall be sought against Borrower, except that Lender may bring a foreclosure action or any other action or proceeding to enable Lender to enforce and realize upon its interest and rights under the Loan Documents or in the Collateral; provided, however, that except as specifically provided herein, any judgment in any such action or proceeding shall be enforceable against Borrower only to the extent of Borrower's interest in the Collateral given to secure the repayment, performance and satisfaction of the Obligations, and Lender shall not sue for, seek or demand any deficiency judgment against Borrower in any such action or proceeding under or by reason of or under or in connection with any Loan Document; and provided, further, that in the event Borrower brings an action, proceeding or claim against Lender disputing the occurrence of an Event of Default, and Lender becomes the prevailing party in such dispute as determined by a court of competent jurisdiction, Lender shall be entitled to recover from Borrower any costs or expenses (including legal fees) incurred by Lender in connection with such action, proceeding or claim. The provisions of this <u>Section 9.23</u>, shall not, however, (i) constitute a waiver, release or impairment of any Obligation evidenced or secured by any Loan Document; (ii) impair the right of Lender to name Borrower as a party defendant in any action or suit for foreclosure and sale under the Loan Documents; (iii) affect the validity or enforceability of any of the Loan Documents or any guaranty made in connection with the Loan or any of the rights and remedies of Lender thereunder; (iv) impair the right of Lender to obtain the appointment of a receiver; (v) constitute a prohibition against Lender to commence any other appropriate action or proceeding in order for Lender to fully realize the security granted by the Loan Documents or to exercise its remedies against the Collateral; or (vi) constitute a waiver of the right of Lender to enforce the liability and obligation of Borrower, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following: (a) fraud, willful misconduct, misrepresentation or failure to disclose a material fact by or on behalf of Borrower or any affiliate of Borrower, or any of its agents or representatives in connection with the Loan; or (b) the forfeiture by Borrower of the Collateral, or any portion thereof, because of the conduct or purported conduct of criminal activity by Borrower or any of its agents or representatives in connection therewith; or (c) any proceeds paid by reason of any insured casualty or any other sums or payments attributable to the Collateral not applied to the Obligations in accordance with the provisions of the Loan Documents; or (d) the misappropriation, misapplication or conversion by or on behalf of Borrower (including failure to turn over to Lender on demand following an Event of Default) of any Collateral or the proceeds thereof; provided, however, solely with respect to the conversion by or on behalf of Borrower, this provision (d) shall not apply if such conversion has been cured within fifteen (15) days following its occurrence.

Notwithstanding anything to the contrary in this Agreement or any of the Loan Documents, (A) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Obligations to require that all Collateral shall continue to secure all of the Obligations in accordance with the Loan Documents, and (B) Lender's agreement not to pursue personal liability of Borrower as set forth above SHALL BECOME NULL AND VOID and shall be of no further force and effect, and the Obligations shall be fully recourse and personal to Borrower in the event that Borrower files for bankruptcy under any Section of the Bankruptcy Code.

**9.24.  Release of Guarantors; No New Guaranties.**  All guaranties entered into in connection with the Original Loan and Original Loan Agreement are hereby terminated and the guarantors which executed such guaranties are hereby released from their liability thereunder. For the avoidance of doubt, the termination and release provided in this section shall not affect the rights of the Lender in connection with the Medallion Relief Enhancement Program, Loan Enhancement Administrator, and Medallion Relief Enhancement Program Reserve Fund.  Lender hereby acknowledges that Borrower shall not provide any guarantee in any form in connection with the Loan, and the Loan shall be secured solely by a lien on and security interests in the Collateral.

**9.25.  Electronic Execution.** Delivery of an executed counterpart of a signature page of (A) this Agreement, (B) any other Loan Document and/or (C) any document, amendment, approval, consent, information, notice, certificate, request, statement, disclosure or authorization related to this Agreement, any other Loan Document and/or the transactions contemplated hereby and/or thereby that is an Electronic Signature transmitted by facsimile, emailed pdf. or any other electronic means that reproduces an image of an actual executed signature page shall be effective as delivery of a manually executed counterpart of this Agreement, such other Loan Document, as applicable. The words "execution," "signed," "signature," "delivery," and words of like import in or relating to this Agreement, any other Loan Document shall be deemed to include Electronic Signatures, deliveries or the keeping of records in any electronic form (including deliveries by facsimile, emailed pdf. or any other electronic means that reproduces an image of an actual executed signature page), each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be; provided that nothing herein shall require Lender to accept Electronic Signatures in any form or format without its prior written consent and pursuant to procedures approved by it; provided, further, without limiting the foregoing, (1) to the extent Lender has agreed to accept any Electronic Signature, Lender shall be entitled to rely on such Electronic Signature purportedly given by or on behalf of Borrower or other person signing a Loan Document without further verification thereof and without any obligation to review the appearance or form of any such Electronic Signature and (2) upon the request of Lender, any Electronic Signature shall be promptly followed by a manually executed counterpart. Without limiting the generality of the foregoing, Borrower hereby (I) agrees that, for all purposes, including without limitation, in connection with any workout, restructuring, enforcement of remedies, bankruptcy proceedings or litigation among Lender, Borrower and the City (to the extent applicable), Electronic Signatures transmitted by telecopy, emailed pdf. or any other electronic means that reproduces an image of an actual executed signature page and/or any electronic images of this Agreement or any other Loan Document shall have the same legal effect, validity and enforceability as any paper original, (II) Lender may, at its option, create one or more copies of

this Agreement or any other Loan Document in the form of an imaged electronic record in any format, which shall be deemed created in the ordinary course of such Person's business, and destroy the original paper document (and all such electronic records shall be considered an original for all purposes and shall have the same legal effect, validity and enforceability as a paper record), (III) waives any argument, defense or right to contest the legal effect, validity or enforceability of this Agreement or any other Loan Document based solely on the lack of paper original copies of this Agreement or any such other Loan Document, respectively, including with respect to any signature pages thereto and (IV) waives any claim against Lender (and any Affiliate of Lender) for any liabilities arising solely from Lender's reliance on or use of Electronic Signatures and/or transmissions by telecopy, emailed pdf. or any other electronic means that reproduces an image of an actual executed signature page, including any liabilities arising as a result of the failure of Borrower and/or any other person to use any available security measures in connection with the execution, delivery or transmission of any Electronic Signature.

 **9.26.**  **Reserved.**

**10.**  **Definitions.** As used in the Loan Documents, the word "shall" is mandatory, the word "may" is permissive, the word "or" is not exclusive, the words "includes" and "including" are not limiting, the singular includes the plural, and numbers denoting amounts that are set off in brackets are negative. As used in this Agreement, the following capitalized terms have the following meanings:

 **"Borrower"** is defined in the preamble hereof.

 **"Business Day"** means any day that is not a Saturday, Sunday or a day on which Lender is closed.

 **"Code"** means the Uniform Commercial Code, as the same may, from time to time, be enacted and in effect in the State of New York; provided, that, to the extent that the Code is used to define any term herein or in any Loan Document and such term is defined differently in different Articles or Divisions of the Code, the definition of such term contained in Article or Division 9 shall govern; provided further, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection, or priority of, or remedies with respect to, Lender's Lien on any Collateral is governed by the Uniform Commercial Code in effect in a jurisdiction other than the State of New York, the term **"Code"** shall mean the Uniform Commercial Code as enacted and in effect in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority, or remedies and for purposes of definitions relating to such provisions.

 **"Collateral"** means any and all properties, rights and assets of Borrower described on **Exhibit B**.

 **"Default Rate"** is defined in <u>Section 1.2(b)</u>.

 **"Deficiency"** means a shortfall in the proceeds of the sale of the Medallions to the extent the principal and interest outstanding on the related Loan cannot be paid in full from such proceeds; provided, however, Deficiency shall not include late fees and default interest.

Case 5:19-bk-03635-MJC   Doc 65   Filed 12/22/22   Entered 12/22/22 09:57:35   Desc
Main Document    Page 23 of 30

"**Dollars**," "**dollars**" or use of the sign "$" means only lawful money of the United States and not any other currency, regardless of whether that currency uses the "$" sign to denote its currency or may be readily converted into lawful money of the United States.

"**Electronic Signature**" is defined in Section 9.25.

"**Event of Default**" is defined in Section 7.

"**Expenses**" means all reasonable and documented out-of-pocket audit fees and expenses, costs, and expenses (including reasonable attorneys' fees and expenses) for preparing, amending, negotiating, administering, defending and enforcing the Loan Documents (including, without limitation, those incurred in connection with appeals or Insolvency Proceedings) or otherwise incurred with respect to Borrower.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative functions of or pertaining to government, any securities exchange and any self-regulatory organization.

"**Governmental Requirement**" means any law, statute, code, ordinance, order, rule, regulation, judgment, decree, injunction, writ, edict, franchise, permit, certificate, license, award, authorization, or other direction, guideline, or requirement of any Governmental Authority, including, without limitation, any requirement under common law.

"**Indebtedness**" means (a) indebtedness for borrowed money or the deferred price of property or services, such as reimbursement and other obligations for surety bonds and letters of credit, (b) obligations evidenced by notes, bonds, debentures, or similar instruments, and (c) capital lease obligations.

"**Insolvency Proceeding**" means any proceeding by or against any Person under the United States Bankruptcy Code, or any other bankruptcy or insolvency law, including assignments for the benefit of creditors, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other relief.

"**Lender**" is defined in the preamble hereof.

"**Lien**" means any claim, mortgage, deed of trust, levy, charge, pledge, security interest or other encumbrance of any kind, whether voluntarily incurred or arising by operation of law or otherwise against any property.

"**Loan**" means a term loan as defined in Section 1.1.

"**Loan Documents**" means, collectively, this Agreement and any other present or future agreement between Borrower and/or for the benefit of Lender in connection with this Agreement, all as amended, restated, or otherwise modified.

"**Loan Enhancement Agreement**" is defined in Section 1.10.

"**Maturity Date**" means 10/1/2047                              .

"**Medallion Relief Enhancement Program**" means the Medallion Relief Program described in section 58-51 of Title 35 of the Rules of the City of New York.

"**Medallion Relief Enhancement Program Documents**" means the documents governing or otherwise related to the Medallion Relief Enhancement Program, including, without limitation, the Loan Enhancement Agreement.

"**Medallion Relief Enhancement Program Reserve Fund**" means the fund established in connection with the Medallion Relief Enhancement Program and administered by the Loan Enhancement Administrator.

"**Obligations**" means Borrower's obligations to pay when due any debts, principal, interest, Expenses and other amounts Borrower owes Lender now or later, whether under this Agreement, the Loan Documents, including, without limitation, any interest accruing after Insolvency Proceedings begin.

"**Person**" means any individual, sole proprietorship, partnership, limited liability company, joint venture, company, trust, unincorporated organization, association, corporation, institution, public benefit corporation, firm, joint stock company, estate, entity or government agency.

"**Servicer**" means Field Point Servicing, LLC.

"**TLC**" means the New York City Taxi & Limousine Commission (or any successor organization which regulates medallions of the type included in the Collateral).

"**TPEP**" is defined in <u>Section 2.3</u>.

**THIS AGREEMENT AND THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Case 5:19-bk-03635-MJC    Doc 65    Filed 12/22/22    Entered 12/22/22 09:57:35    Desc
Main Document    Page 25 of 30

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first above written.

LENDER:

**DePalma Acquisition I, LLC**

By:_____
Name: Sean Barry
Title:   Authorized Signatory

**BORROWER**:

_____

Claude Mollenthiel

# EXHIBIT A

## AMORTIZATION SCHEDULE

Case 5:19-bk-03635-MJC    Doc 65    Filed 12/22/22    Entered 12/22/22 09:57:35    Desc
Main Document      Page 28 of 30

# EXHIBIT B

## MEDALLIONS AND OTHER COLLATERAL

The collateral (the "Collateral") consists of all of Borrower's right, title and interest in and to the following personal property:

(a)     All of the New York City taxicab licenses, rate cards, and representative medallions (including, without limitation, those licenses, and medallions described in the table below);

(b)     Any subscription right granted to such Borrower by the City of New York to purchase one or more additional taxicab licenses and representative medallions or any partial interest therein;

(c)     All books and records relating to any of the foregoing; and

(d)     All substitutions for, all additions to, and all proceeds and products of all of the foregoing property described in subparagraphs (a) through (c) above in any form whatsoever (including, without limitation, all proceeds of insurance thereon), provided, however, that there shall be excluded from the Collateral any lease payments arising from a medallion until an Event of Default has occurred and is continuing and the Lender shall not exercise any remedies with respect to such lease payments until an Event of Default has occurred and is continuing.

## MEDALLIONS:

| Holder | Medallion Number |
|---|---|
| Claude Mollenthiel | 2A10 |

**EXHIBIT C**
**RECURRING ACH PAYMENT AUTHORIZATION FORM**

 **FIELD POINT**
**SERVICING**

### Recurring ACH Payment Authorization Form

Please sign and complete this form to authorize Field Point Servicing LLC to automatically make a recurring debit to your checking or savings account.

<u>Once complete, please email a copy to accountservices@fpservicing.com or fax a copy to 203-648-9322.</u>

If you have any questions, please call 203-836-8015.

By signing this form you give us permission to charge your checking or savings account for the amount indicated below on the first (1st) day of each and every calendar month until the earlier of (i) all outstanding balances being paid in full or (ii) you provide us with written notice of your desire to terminate such recurring ACH payment, such notice being delivered no less than 15 days prior to the next scheduled payment date. You agree that no prior-notification will be provided unless the date or the amount of such payment changes, in which case you will receive notice from us at least 15 days prior to the payment being collected.

Loan # _____     Borrower Name _____

**Please complete the information below:**

I _____ authorize Field Point Servicing LLC to debit my checking or savings
(Full Name/Managing Member)

account indicated below in the amount of _____ on the first (1st) day of each calendar month.
(Amount)

Billing Address _____     Phone # _____

(Line #2) _____

City, State, Zip _____     Email _____

| Account Type: | ☐ Checking | ☐ Savings | |
|---|---|---|---|
| Name on Acct | | | |
| Bank Name | | | Routing Number   Account Number |
| Account Number | | | :222222222: :020 111 3359: 4527 |
| Bank Routing # | | | |
| Bank City/State | | | |

SIGNATURE _____     DATE _____

I understand that this authorization will remain in effect until I cancel it in writing, and agree to notify Field Point Services LLC in writing of any changes in my account information or the termination of this authorization at least 15 days prior to my next scheduled payment. If the above noted periodic payment date falls on a weekend or holiday, I understand that the payment may be executed on the next business day. I understand that because this is an electronic transaction, these funds may be withdrawn from my account as soon as the above noted periodic payment date. In the case of the payment being rejected for Non Sufficient Funds ("NSF"), I understand that Field Point Servicing LLC may, at its discretion, attempt to process the charge again within 30 days, and I agree to an additional $50.00 charge for each attempt returned NSF, which will be initiated as a separate transaction from the authorized payment, and which will be collected by means of an electronic funds transfer from the above-listed account. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I will not dispute Field Point Servicing LLC's billing with my bank, so long as the transaction corresponds to the terms indicated in this agreement.

<u>**EXHIBIT C – LOAN AND SECURITY AGREEMENT**</u>                    Page 1

Case 5:19-bk-03635-MJC    Doc 65    Filed 12/22/22    Entered 12/22/22 09:57:35    Desc
                    Main Document        Page 30 of 30